Peter Paul INSERO, Jr., on Behalf of Arthur CAULEY, Petitioner,

v.

Robert HENDERSON, Superintendent, Auburn Correctional Facility, Auburn, New York, Respondents.

No. 82 Civ. 3298 (KTD).

United States District Court,
S.D. New York.

Dec. 27, 1982.

---

Stephen J. Pittari, White Plains, N.Y., for petitioner; Peter Paul Insero, Jr., White Plains, N.Y., of counsel.

Carl A. Vergari, Dist. Atty. of Westchester County, White Plains, N.Y., for respondents; Lois A. Cullen, Asst. Dist. Atty., White Plains, N.Y., of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

■ Arthur Cauley was convicted on January 31, 1978, after a jury trial in New York State Supreme Court, New York County, with Russell R. Leggett, Judge, presiding, of attempted murder of a police officer, assault first degree, two counts of possession of a weapon and dangerous instrument and appliance as a felony, attempted assault in the first degree, assault in the second degree, robbery in the first degree, robbery in the second degree, burglary in the second degree, kidnapping in the second degree, and coercion in the second degree. Mr. Cauley appealed the conviction challenging the constitutionality of the charge to the jury. His conviction was upheld in the New York State Courts. All state remedies have been exhausted in accordance with 28 U.S.C. § 2254.[1]

Cauley bases his petition on one segment of the roughly 150 page charge to the jury:

As to intent, I'm going to charge you that a person is deemed to intend the natural consequences of his actions, and you have a right to find such intent from results reproduced by his actions.

However, if the act was done under circumstances or conditions that preclude the existence of such an intent you have the right to find that the produced results was unintentional.

Tr. 887–88. The petitioner contends that these instructions unconstitutionally shifted the burden of proof on intent to him, and thus are proscribed by the tenets of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

In *Sandstrom* the trial judge instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 513, 99 S.Ct. at 2453. The Supreme Court held that this instruction, in effect, impermissibly shifted the burden of proof on the issue of intent. It established a presumption of intent, leaving it to the defendant to rebut. This violated the defendant's due process rights because the jury might convict a defendant without finding that the government proved the element of intent beyond a reasonable doubt. The Second Circuit recently laid out a two-step process by which the petitioner's *Sandstrom* claim may be evaluated: first, examine whether a particular portion of the charge runs afoul of *Sandstrom;* and second, examine whether in the context of the charge as a whole, the defect was "cured." *Rock v. Coombe,* 694 F.2d 908 at 915 (2d Cir.1982).

■ The first determination is clear. The state trial judge's language in isolation violates the proscriptions of *Sandstrom.* Unlike several charges that have passed muster under Second Circuit scrutiny, the prohibited language—"a person is deemed to intend the natural consequences of his act"—was not followed-up within the *same* sentence by ameliorative language. *See,*

---

**1.** The state claims that petitioner is procedurally barred from presenting this claim because his attorney did not object at trial. The state asserts this bar despite the fact that the state court's Appellate Division in upholding petitioner's conviction did reach the merits of Cauley's present petition. As the Second Circuit recently stated in this same setting, "we see no warrant ... for guarding state procedural rules more vigilantly than the state itself does." *Washington v. Harris,* 650 F.2d 447, 452 (2d Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982). Further support for this proposition abounds. *See, e.g., Arroyo v. Jones,* 685 F.2d 35, 38 n. 3 (2d Cir.1982); *Ramirez v. Jones,* 683 F.2d 712, 715 n. 5 (2d Cir.1982). Therefore, I reach the merits of petitioner's claim.

*e.g., Rivera v. Coombe,* 683 F.2d 697 (2d Cir.1982) ("unless such acts were done under circumstances which would preclude the existence of such intent %y(4)2"); *Mancuso v. Harris,* 677 F.2d 206 (2d Cir.1982) (same); *Washington v. Harris,* 650 F.2d 447 (2d Cir. 1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982) (same). Instead, the mitigating language appears in the next sentence and not in the same sentence as the constitutionally infirm language.[2] The use of "preclude" also is particularly troublesome. "If, to avoid the presumption, the circumstance must *preclude* the presumed intent, it would appear that intent need not be proven beyond a reasonable doubt." *Rock v. Coombe,* at 915 n. 6 (emphasis in original). Therefore, I find that the particular portion of the jury charge cited by petitioner violates *Sandstrom.*

A more difficult question is whether the charge *taken as a whole* cures the defect or impermissibly shifts the burden of proof on intent. *See Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). For the three reasons that follow, I find that the charge, as a whole, was constitutionally proper.

First, language immediately preceding the improper portion unequivocally states that it is the government's burden to prove intent beyond a reasonable doubt. The relevant portion of the charge reads:

Intent is a matter of operation of a person's [mind] or the mental state existing in the attempting of the commission of the crime that is alleged against him. In other words, did there exist a copable [sic] state of mind?

We cannot get within the Defendant's mind or discover just what lies there with respect to his actions, so therefore, we are limited to the external indications of his thinking, the thoughts, and the intentions he actually had as indicated by the things he said and did, and the means employed in doing it.

You need not find that intent to cause death was formed at any specific time or even that it existed at all before. *It actually existed when the incident occurred, but if you find such intent beyond a reasonable doubt, before you can bring in a verdict of guilty as to each count* [sic]. I'm going to proceed to instruct you now on the nature and requirements of intent as described by law for conviction under this particular count.

Tr. 886–87 (emphasis added). The judge followed this appropriate charge on the government's burden with the sentence violating *Sandstrom.* Ameliorative language, however, appears immediately after the improper language:

As to intent, I'm going to charge you that a person is deemed to intend the natural consequences of his actions, and you have a right to find such intent from results reproduced by his actions. *However, if the act was done under circumstances or conditions that preclude the existence of such an intent, you have the right to find that the produced result was unintentional.*

Copable [sic] mental state means intentionally or knowingly. A person acts intentionally with respect to a result or to conduct described by a statute defining an offense *when his conscious objective is to cause such a result or engage in such conduct.* A person acts knowingly with respect to conduct or to a circumstance described by the statute defining an offense when he is aware that his conduct is of such a nature or that such circumstance exists.

In order to aid and abet one another to commit a crime, it's necessary that a Defendant intentionally associates himself in some way with the criminal venture, and that he participates or assists in it as if something he wishes to bring about, and that he intentionally seeks by some other acts or some other actions of his to make it successful. Participation is in-

---

2. "However, if the act was done under circumstances or conditions that preclude the exist-   ence of such an intent ...." Tr. 887–88.

tentionally—as if done voluntarily and purposely, and with specific intent to do some act, which the law forbids, that is to say, with any evil motive or bad purpose, either disobeying or disregard the law. In other words, the acting of an aider or abettor must be a willful act done with the intention that the law should be violated.

Tr. 887–89 (emphasis added).

In addition, the defect is cured by the trial judge's later instructions to the jury on intent in which he did not use the proscribed language:

A person acts intentionally with respect to a result or to conduct described by a statute describing the offenses, [when] his conscious objective is to cause such result or engage in such conduct.

* * * * * *

In order to aid and abet one another to commit a crime, it's necessary that the Defendant intentionally associates himself in some way with a criminal venture, and that he participates or assists in it as something he wishes to bring about, and that he intentionally seeks by some action of his to make it successful.

In summary, therefore, as to the 24th count of this Indictment, in order to find the Defendant, Arthur Cauley, guilty of Robbery in the First Degree, you must be satisfied that the People have proved each and every element of the crime beyond a reasonable doubt.

A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conduct or objective is to cause such result or engage in such conduct.

The crime of burglary requires criminal intent. In other words, regardless of the nature of the intrusion claimed or even in those cases where it can be proved that the Defendant entered and remained unlawfully in the building, it must further be proved that he had done so with the intent to commit a crime therein. I have already defined intent. Intent is a part of the operation of a man's mind. We cannot get within his mind to discover

just what lies in there with respect to his actions. Therefore, we are limited to the external indication of his thinking, his thoughts and intentions which may be indicated by mentioning what he said and did. Intention may be proved by direct or circumstantial evidence. It may be inferred from the actions of the Defendant upon the theory that a person intends the natural and probable consequences of his actions. This is infrequent [sic] that you are to draw that conclusion as the triers of the facts. It's up to you to draw any inferences from any of the facts and circumstances that are presented.

Tr. 921, 932–33.

Second, the charge contains numerous statements that the government must prove each and every element of the charged crimes beyond a reasonable doubt. *See, e.g.,* Tr. 879, 880, 892, 893, 894, 898, 903, 904, 913, 915, 917, 921, 924, 927–28, 929, 935, 938, 940.

Third, I do not approach this question without authoritative guidance. The Second Circuit has faced the issue of burden-shifting jury charges several times since *Sandstrom.* These decisions take a restrictive view toward the meaning of *Sandstrom. See Langone v. Smith,* 682 F.2d 287 at 289–90 (2d Cir.1982) (Oakes, J., dissenting from denial of petition for rehearing en banc). In cases involving jury charges very similar to the one in the instant case, the Second Circuit has dismissed the habeas corpus petitions. For example, the following jury charges have passed constitutional muster:

A person is presumed to intend the natural and probable consequences of his act.

* * * * * *

Under our law every person is presumed to intend the natural and inevitable consequences of his own voluntary acts and unless such acts were done under circumstances which would preclude the existence of such intent, the jury has a right to infer from the results produced, the intention to effect such result. The intent formed, is a secret and silent oper-

ation of the mind and its physical manifestations, the accomplishment of the thing determined upon. The individual whose intent is sought to be ascertained may remain silent or if he speaks, may probably will if he has a crime to hide, speak untruthfully, and thus the mind is compelled from necessity to refer to the act and the physical manifestations of the intent exhibited by the results produced as the safest if not the only proof of the fact to be ascertained.

*Rivera v. Coombe,* 683 F.2d 697, 699.

The way intent is determined is from the actions and the conduct of the individual whose intent is the subject of your inquiry. Everyone is presumed to intend the natural consequences of his act and unless the act is done under circumstances or conditions that might preclude the existence of such an intent, you, the jury, have to find, have the right to find the requisite intent from the proven actions of an individual.

*Mancuso, supra,* 677 F.2d at 210. These charges are very similar to the one in the instant case. Because I am bound by the Second Circuit precedent, I must also read *Sandstrom* restrictively. Accordingly, the instant petition is denied.