Victor **PEREZ,** Petitioner,

v.

**UNITED STATES of America,**
Respondent.

No. 98–CV–1316 (ADS).

United States District Court,
E.D. New York.

Aug. 4, 2003.

Eric Nordman, Westerville, OH, for Petitioner.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York by Robert P. LaRusso, Assistant United States Attorney, Central Islip, NY, for Respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The petitioner Victor Perez ("Perez") moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence arising from his 1991 conviction in this Court. For the reasons stated below, Perez's motion is denied.

On May 16, 1990, after a jury trial, this Court entered a judgment convicting Perez of conspiring to distribute, and possessing with intent to distribute, cocaine and cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(c). The Court sentenced Perez to 235 months incarceration; five years supervised release; and a fifty dollar special assessment.

Perez directly appealed his conviction to the Court of Appeals for the Second Circuit ("Second Circuit"), alleging that: (1) this Court erred in admitting evidence that Perez shot a government informant, Manuel Rivas; (2) this Court erred in denying his request for a bench trial, even though the government objected; (3) this Court erred in refusing to instruct the jury on multiple conspiracies; and (4) this Court erred in denying his request for a polygraph examination.

On September 25, 1991, the Second Circuit affirmed his conviction, finding that: (1) the Court properly admitted evidence that Perez shot Manuel Rivas because it heard testimony which supported the conclusion that "the shooting was committed in furtherance of the conspiracy"; (2) the Court properly denied his request for a bench trial because the government objected, and if either side refuses to consent to a bench trial, a jury trial is the proper remedy; (3) he was not entitled to a multiple conspiracies jury instruction; and (4) this Court correctly denied his request for a polygraph examination. *United States v. Perez*, 946 F.2d 883 (2d Cir.1991).

On February 23, 1998, Perez filed the instant motion, alleging that: (1) trial counsel was ineffective for failing to conduct an adequate pre-trial investigation; (2) trial counsel was ineffective for failing to challenge the amount of drugs attributable to him; (3) counsel was ineffective for failing to argue that his sentence should not have been enhanced for obstruction of justice; (4) counsel was ineffective for failing to object to the sentence enhancement for possession of a weapon; and (5) he was denied due process when the Court sentenced him according to a criminal history category which allegedly misrepresented his prior criminal history.

Perez also filed two motions to supplement his pleadings, arguing that: (1) the government impermissibly promised something of value to a witnesses in exchange for testimony; and (2) he has newly discovered evidence—a transcript and an affidavit from Yunior Capellan, the witness who identified Perez as the shooter, which states that Capellan was told to identify Perez, and that he may not have recognized Perez without assistance.

Perez also filed a motion for discovery, specifically requesting all documents relating to police officer Michael Dowd and Christopher DiLorenzo, alleging that these two officers were involved in corrupt activity and framed Perez. The government opposed the discovery motion, claiming that Officer Dowd did not participate in Perez's investigation and Officer DiLorenzo did not engage in any corrupt activity.

### DISCUSSION

It is well settled that a Section 2255 motion is not a substitute for direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982); *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir.1998). Accordingly, "Section 2255 claims not raised on direct review are procedurally barred unless they raise constitutional or jurisdictional claims, or result in a 'complete miscarriage of justice.'" *Johnson v. United States*, 313 F.3d 815, 817 (2d Cir.2002) (quoting *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir.1996)). A petitioner seeking to raise a claim in his Section 2255 motion that he did not raise on direct appeal must show "cause and prejudice" or a "fundamental miscarriage of justice" for his failure to do so. *Frady*, 456 U.S. at 167, 102 S.Ct. 1584 (citing *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216(1973)); *Munoz*, 143 F.3d at 637.

One exception to this procedural default rule is for claims of ineffective assistance of counsel. Such claims may be brought in a Section 2255 proceeding whether or not the petitioner could have raised them on direct appeal. *Massaro v. United States*, — U.S. ——, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

### A. As to the Ineffective Assistance of Counsel Claim

In order to prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel performed deficiently and that the deficiency caused actual prejudice to his defense. *Strick-*

*land v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002). Under the first prong, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. 2052, and establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham,* 313 F.3d at 730 (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Also, the Second Circuit has instructed that a reviewing court should be "highly deferential" to counsel's performance, because " 'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' " *Pratt v. Greiner,* 306 F.3d 1190, 1196 (2d Cir.2002) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically noted that the federal district courts need not address both components if a petitioner fails to establish either one. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

### (1) As to the Alleged Failure to Investigate

■ Perez alleges that his counsel ineffectively failed to investigate certain evidence: "the testing of the clothing worn by [Perez] at the time of his arrest" for gunpowder residue; "the medical records of the victim"; and "the police officers who assisted the victim in identifying [Perez] as the alleged 'shooter.' "

Perez's claim is without merit. By his own admission, his arguments are conclusory and speculative. Perez has not demonstrated that counsel's alleged failure to investigate fell outside the range of competent performance. Further, even though Perez asserts how he thinks this evidence may have assisted him at trial, his allegations do not rise to the level of prejudice in support of a constitutional violation. Perez has not shown that the outcome of the trial would have been different but for counsel's alleged failure to investigate his shirt, the victim's medical records, or the relevant police officers. *See Loliscio v. Goord,* 263 F.3d 178, 194 (2d Cir.2001); *United States v. Acevedo,* 229 F.3d 350, 356 (2d Cir.2000). Accordingly, Perez's ineffective assistance of counsel claim with regard to counsel's failure to investigate certain evidence is denied.

### (2) As to the Alleged Failure to Challenge Sentence

Perez alleges that his counsel was ineffective for failing to challenge at his sentence: (1) the amount of drugs attributable to him; (2) the obstruction of justice enhancement; and (3) the enhancement for possession of a weapon.

■ The Court enhanced Perez's sentence for obstruction of justice because he attempted to kill prosecution witness Nelson Rivas. On this issue, the Second Circuit found:

At a pretrial hearing, the district court heard testimony from Rivas that Perez

was one of the gunmen who shot him. A cellmate of Perez testified that Perez stated that he knew Rivas was an informant and shot him for that reason. This testimony was obviously sufficient to allow the district court to conclude that the shooting was committed in furtherance of the conspiracy.

*United States v. Perez,* 946 F.2d 883 (2d Cir.1991). Thus, Perez's argument that "the government failed to prove that the alleged conduct of the Petitioner was in furtherance of the conspiracy to distribute cocaine and cocaine base" is without merit. It follows that counsel is not ineffective for failing to raise a meritless claim. *See Aparicio v. Artuz,* 269 F.3d 78, 99–100 (2d Cir.2001). Thus, Perez's claim that counsel was ineffective for failing to argue against enhancement for obstruction of justice is denied.

Similarly, Perez's argument that counsel should have challenged the enhancement for possession of a weapon is without merit. It is academic that the Court found Perez had a weapon if the Court also determined that he shot a government witness. Counsel's decision not to argue otherwise does not render his performance deficient.

■ With regard to the amount of drugs foreseeable to Perez, his underlying complaint is that "the Court relied upon evidence of a notebook found in the apartment of a co-defendant which the government alleges indicates high volume cocaine sales … even though such evidence was deemed inadmissible at trial." It is well settled that the Court may consider information at the sentencing hearing even if it was not admissible trial evidence. *See United States v. Finkelstein,* 229 F.3d 90, 96 (2d Cir.2000) ("So long as the defendant is given an opportunity to contest the accuracy of the information, *see Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 92

L.Ed. 1690 (1948), the court may rely even on information that would not have been admissible at trial") (citing *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). Thus, Perez's attorney was not deficient for failing to argue against the Court's use of that information. In addition, Perez has not shown that his sentence was incorrectly calculated, or that it would have been reduced if counsel had argued that the amount of drugs was not adequately proven at trial. Accordingly, Perez's entire ineffective assistance of counsel claim is denied.

### B. As to Perez's Remaining Issues

■ Perez also contends that: (1) the district court should consider a departure from the sentence guidelines, because his criminal history category does not accurately reflect his past criminal conduct; and (2) that his right to a fair trial and due process rights were violated because the "government impermissibly promised witnesses something of value in exchange for their testimony"; and (3) that he has newly discovered evidence which "supports the issues originally raised in [his] § 2255 motion."

Perez did not raise any of these claims on direct appeal. As explained above, if a petitioner does not raise a claim on direct appeal, the Court cannot review it in a Section 2255 motion, absent cause and prejudice for the procedural default. Regarding the sentence departure issue, Perez has not alleged cause or prejudice, nor has he shown that a fundamental miscarriage of justice will occur if the Court does not review this claim. Thus, the Court will not review the sentence departure claim.

■ As to the claim of government enticement of witnesses, Perez again did not state cause or prejudice, or a fundamental miscarriage of justice. Perez cited a

Tenth Circuit case, *United States v. Singleton*, 144 F.3d 1343 (10th Cir.1998), and asked this Court to adopt it. However, the Tenth Circuit withdrew its initial opinion and granted a rehearing, at which the court reversed its initial decision. *See Singleton*, 165 F.3d 1297 (10th Cir.1999). *Singleton* now stands for the proposition, presumably well-established previously, that the government, particularly the United States Attorney's office, may offer an accomplice leniency in exchange for truthful testimony. *Id.* Thus, not only is Perez's claim moot, but he has not shown the requisite cause and prejudice or fundamental miscarriage of justice necessary to invoke review of his claim. Accordingly, the Court will not review his claim regarding government enticement of witnesses.

■ With respect to the issue of "newly discovered evidence," Perez submitted an affidavit from Yunior Capellan, who testified at the trial that Perez shot him. In the affidavit, which is dated April 3, 2001, Mr. Capellan stated that "without Nelson Rivas and Agent Pedro Velazco pointing out Victor Perez, I could not have identified him in court." Notably, Mr. Capellan did not state that Perez wasn't the shooter, but only that Rivas and Velazco assisted in identifying Perez. Also submitted by Perez was a transcript of conversation between a private investigator and Mr. Capellan. Having carefully reviewed Perez's submissions, the Court finds that this alleged newly discovered evidence does not reveal anything of substance.

First, the submissions lack authenticity—neither the transcript nor the affidavit are official documents and neither bear original signatures. Mr. Capellan's alleged affidavit is a photocopied fax and although it bears a signature, the document is not an original. The transcript of the alleged conversation between a private investigator and Mr. Capellan consists of photocopied pages that bear no cover sheet or official insignia of any kind. Further, the private investigator is not identified throughout · any of the submissions, nor does he certify that he actually had the supposed conversation with Mr. Capellan. Even if Perez provided more official or authentic information to the Court, it would not sufficiently support his motion. Looking at the substance of the transcript, Mr. Capellan reveals no new exculpatory evidence. The conversation is choppy and often lacks responses, which is indicated by a series of questions marks ("? ? ? ? ? ? ?") in the transcript. The questions and answers are mostly circular, revealing no information whatsoever. In addition, Perez does not satisfactorily explain why it took him until 2001, eleven years after the alleged shooting incident took place, to obtain information from Mr. Capellan. Perez simply states that "[t]his new evidence was only available and obtained through the services of a private investigator" and "was not available until after the filing of his most recent supplemental motion of November 13, 2002." Curiously however, the transcript bears a date of April 16, 2001. In any event, none of Perez's submissions warrant any further review by this Court, or a hearing. Accordingly, Perez's claims with respect to modification of his sentence; government interference with witnesses; and newly discovered evidence are denied.

### C. As to Perez's Discovery Requests

Perez has requested numerous government documents based on his belief "that there were corrupt Police practices in the investigation and prosecution of the Petitioner." Perez specifically asks for documents relating to Officer Michael Dowd and Officer Christopher DiLorenzo. The government has vigorously opposed Perez's request, stating that Officer Dowd had

no involvement with the investigation, arrest and prosecution of Perez's case. In addition, Officer DiLorenzo had minimal involvement in Perez's case, and his conduct was totally legitimate. To support its position, the government has submitted several replies, one included a confidential document regarding Officer Dowd. Upon the government's request, the Court will seal this letter. A redacted copy of the letter, as submitted by the government, will be available in Perez's file.

 A habeas corpus petitioner is not entitled to discovery as a matter of course, but must show good cause for his request. *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 1796–97, 138 L.Ed.2d 97 (1997); Rule 6(a) of the Rules Governing Section 2254. Perez has provided not one iota of proof that any corruption took place during his case. Where, as here, the request for discovery is a mere fishing expedition, the Court will not grant it. *See Hirschfeld v. Div. of Parole*, 215 F.R.D. 464, 465 (S.D.N.Y.2003); *Charles v. Artuz*, 21 F.Supp.2d 168, 170 (E.D.N.Y.1998). Accordingly, Perez's discovery motion is denied.

### CONCLUSION

For the foregoing reasons, Perez's Section 2255 motion to vacate, set aside or correct his sentence is DENIED. Because it is clear on the face of his petition that Perez is not entitled to relief, his request for an evidentiary hearing and discovery materials are also DENIED.

Pursuant to Fed. R.App. P. 22(b) and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as Perez has not made a substantial showing of a denial of a constitutional right. *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**